UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARDAE HINES,

                           Petitioner,

        v.

UNITED STATES OF AMERICA,

                         Respondent.

**20 Civ. 10064 (CS)**
**17 Cr. 364 (CS)**

## MEMORANDUM OF LAW IN OPPOSITION TO ARDAE HINES' PETITION PURSUANT TO 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT HIS SENTENCE

AUDREY STRAUSS
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Samuel Raymond
Jacqueline Kelly
Allison Nichols
Maurene Comey
Assistant United States Attorneys
    *Of Counsel*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 2

PROCEDURAL BACKGROUND............................................................................................ 2

STATEMENT OF FACTS ....................................................................................................... 8

LEGAL STANDARD............................................................................................................... 9

ARGUMENT .......................................................................................................................... 11

    A. The Petition is Untimely ................................................................................................ 12

    B. The Petition Fails on its Merits ..................................................................................... 14

        1. Mr. Palma Acted Effectively in Advising Hines' Regarding Suppression Litigation, and Hines was not Prejudiced.................................................................................................. 15

        2. Mr. Palma Acted Effectively in Advising Hines Regarding Plea Negotiations, and Hines was not Prejudiced ..................................................................................................... 17

        3. Mr. Palma Acted Effectively in Advising Hines Regarding Sentencing, and Hines was not Prejudiced .................................................................................................................... 23

        4. The Government Understands that Hines Did Not Specifically Instruct Mr. Palma to File an Appeal ............................................................................................................................ 26

CONCLUSION........................................................................................................................ 28

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to Ardae Hines' *pro se* petition to vacate, set aside, or correct his sentence (the "Petition"). Hines argues that he received ineffective assistance of his trial counsel Richard Palma, Esq.

As set forth below, the Court should deny the Petition in whole because it is untimely. If the Court determines that the Petition is timely, the Court should nonetheless deny Hines' ineffective assistance claims with respect to motion practice, plea bargaining, and sentencing on their merits. On each issue, Mr. Palma provided effective assistance of counsel, and to the extent he did not, Hines suffered no prejudice. As to Hines' assertion that Mr. Palma provided ineffective assistance with respect to his appeal, the Government respectfully requests that the Court order Mr. Palma file a short supplemental declaration, after which the Government will also request that the Court deny Hines' Petition on that basis.

## PROCEDURAL BACKGROUND

On September 12, 2018, Hines was charged in Superseding Indictment S4 17 Cr. 364 (CS) (the "Indictment"), along with numerous other members and associates of the Southside street gang, which operated in the City of Newburgh from about 2014 through at least in or about May 2017. Hines was charged with racketeering conspiracy for his membership in Southside (Count One); conspiracy to distribute 1 kilogram and more of heroin and 280 grams and more of crack cocaine (Count Three); conspiracy to distribute 280 grams and more of crack cocaine (Count Four); and firearms possession and discharge in furtherance of both the racketeering and narcotics conspiracies (Count Six).

2

On February 7, 2019, Hines pleaded guilty, pursuant to a plea agreement (the "Plea Agreement"), to Counts One and Three (the Plea Agreement is enclosed herein as Ex. A)[1]. In the Plea Agreement, the Government agreed to dismiss open counts at Hines' sentencing (Ex. A at 2). Pursuant to the plea agreement, Hines and the Government agreed that neither party would appeal a sentence of 210 months or below (Ex. A at 5).

During the plea proceeding, the defendant stated the following under oath, among other things, in response to the Court's questions:

- When asked if he was satisfied with his counsel's representation of him, he said, "Yes." (Plea Transcript, February 7, 2019, 4).

- When asked if he understood that if his "sentence is different from what your lawyer or anyone else told you it might be, or if it's different from what you expect or if it's different from what's contained in your plea agreement with the government, you will still be bound by your guilty plea and you will not be allowed to withdraw your guilty plea," the defendant answered "Yes." (*Id.* 14).

- When asked if he was satisfied that he understood the Plea Agreement, and that he had reviewed it with his counsel, he responded each time, "Yes." (*Id.* 14–15).

- When asked if the Plea Agreement contained the "complete understanding" between the defendant, his counsel, and the Government, the defendant said, "Yes." (*Id.* 15).

---

[1] Under the Plea Agreement, Hines allocuted to conspiring to distribute 280 grams and more of crack, in violation of Title 21, United States Code, Section 841(b)(1)(A), and quantities of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(C).

3

- When asked if there was any other "promise, agreement, understanding, or deal with the government that's not written down in the plea agreement," the defendant said "No." (*Id.* 15).

- When asked if anyone had threatened, forced, or coerced him to plead guilty, Hines responded "No." (*Id.* 15).

- When asked if anyone promised or offered him inducements to enter into the plea agreement, the defendant said "No." (*Id.* 15).

- When asked if "anyone made a promise to you as to what your sentence would be," the defendant said "No." (*Id.* 15).

- When asked if he understood that the maximum sentence under Counts One and Three of the Indictment was life imprisonment for each count, the defendant said, "Yes." (*Id.* 9).

- Hines answered the same with respect to the mandatory minimum penalty of 10 years' for Count Three. (*Id.* 9–10).

- When asked if he understood that, pursuant to the Plea Agreement, he was waiving his right to challenge, through an appeal or otherwise, any sentence within or below the stipulated Guidelines range of 210 to 262 months' imprisonment, he said, "Yes." (*Id.* 16).

- When asked what he did, in his "own words," to make him guilty, Hines responded:
  - "I grew up in Newburgh, New York with a group of individuals that the government here calls Southside.  I associated with these neighborhood

individuals insofar as it relates to my sales of crack cocaine and heroin.  In that regard, on March 11, 2017, I sold heroin to a co-defendant, who I knew needed it for further distribution, and in the summer of 2015 in Newburgh, I collectively sold 280 grams of crack cocaine to coconspirators.  Finally, I knew that when I committed these drug sales, they were wrong and against the law."  (*Id.* 18).

- o  Hines continued, after further questions from the Court, that he "provided to other people at least 280 grams . . . of crack that [he] knew they were going to resell," and that "some of the people to whom [he] provided the crack for resale people who were associated with the same group that the government is calling Southside," "agree[ing] and understand[ing] that some members of the group would commit crimes in furtherance of their membership in the group, such as drug sales." (*Id.* 19).

- When asked, after further colloquy, whether he was pleading guilty voluntarily and of his own "free will" to Counts One and Three, the defendant answered "Yes" to both. (*Id.* 20).

The Court adjourned sentencing, at the defendant's request, from May to June 17, 2019.[2] Hines submitted a sentencing memorandum on June 6, 2019, Dkt. No. 405, which raised disputes to the factual recitation in the Pretrial Sentence Report ("PSR"), after which the Court again

---

[2]  The Court first adjourned sentencing to June 12, 2019, but then adjourned to June 17 based on the availability of Government counsel.  Dkt. No. 397.

adjourned sentencing, to July 17, 2019, at the Government's request, for a potential *Fatico* hearing. Dkt. No. 406. On June 25, 2019, the Government filed a letter describing resolved issues and those remaining in dispute between the parties. Dkt. No. 417. On July 10, 2019, the Government filed its sentencing submission, which included three exhibits and its explanation of the scope of the potential *Fatico* hearing. Dkt. No. 422. On July 12, 2019, Hines filed a letter, moving to limit cross-examination of himself should he choose to testify at the *Fatico* hearing, and requesting from the Government certain disclosure materials of what he called an "extraneous matter." Dkt. No. 423. The Government responded on the same day, opposing the motion and request for discovery. Dkt. No. 425. Given the dispute, at the defendant's request, the Court adjourned sentencing to July 31, 2019. Dkt. No. 429. On July 30, 2019, Hines again moved to limit cross-examination and requested additional discovery. Dkt. No. 433.

Sentencing proceeded on July 31, 2019. The Court heard argument, and then ruled that the Government was not limited in its cross-examination and the defendant was not entitled to additional discovery. (Sentencing Tr. July 31, 2019, 8–9). After the Court's ruling, and a five-minute recess so that Mr. Palma could speak with Hines, Mr. Palma informed the Court that Hines would not testify. (*Id.* 15). The Court heard argument on the interpretation of certain evidence that had been appended to the Government's submission, ultimately making certain amendments to the PSR. (*Id.* 14–37). The Court then allowed both sides to make arguments about the proper sentence, and ultimately imposed a sentence of 180 months' imprisonment, within the Stipulated Guidelines Range set forth in the plea agreement. Judgment was entered on August 1, 2019, and no appeal was filed.

6

On January 14, 2020, more than four months after the judgment was entered, Hines wrote a letter to the Court requesting his sentencing transcript so he could file an "appeal and 2255 motion in the future;" the Court ordered that the Clerk send the transcript to him.  Dkt. No. 500. On February 2, 2020, Hines wrote to the Court to request his plea agreement and bail transcript so he could file an appeal and 2255 motion; the Court ordered the clerk to send that transcript, and Mr. Palma to send the plea agreement.  Dkt. No. 507.  Hines then wrote to the Court on September 10, 2020 requesting additional time to file a 2255 petition.  Dkt. No. 555.

Hines ultimately filed the Petition on October 31, 2020, and the Court docketed the Petition on November 30, 2020.  Construing the defendant's habeas petition liberally, Hines appears to raise the following grounds for relief:[3] (1) that Mr. Palma was ineffective in advising Hines to plead guilty; (2) that Mr. Palma was ineffective in failing to file a motion to suppress certain evidence; (3) that Mr. Palma was ineffective in failing to file a notice of appeal; and (4) that Mr. Palma was ineffective at Hines' sentencing.

After reviewing the Petition, the Government requested, and the Court ordered, that Hines sign a waiver of his right to the attorney-client privilege (Dkt. Nos. 565, 566).  Hines filed such a waiver, which was filed on the docket in his civil case on January 5, 2021 (Dkt. No. 6). Mr. Palma filed an amended, operative, affidavit on February 2, 2021 (Dkt. No. 591) ("Palma Affidavit").  On February 16, 2021, Hines mailed from his prison four undated affidavits,

---

[3] To the extent the Court identifies additional grounds for relief in the defendant's submission not addressed by the Government herein, the Government respectfully requests an opportunity to respond to those grounds.

putatively from his girlfriend, mother, sister, and acquaintance, regarding their interactions with Mr. Palma.  (Dkt. No. 594).

## STATEMENT OF FACTS

The facts set forth in the PSR are summarized as follows: Hines was a member of the Southside street gang in Newburgh.  Southside engaged in acts of violence and the distribution of narcotics in Newburgh, and participated in criminal activity, particularly violence against rival gang members, which was important for elevating members' status and reputation within Southside.  (PSR ¶ 17).  Southside members also used violence, including shootings and robberies, to defend drug turf against rival gang members, including members of a rival Newburgh gang known as the Yellow Tape Money Gang ("YTMG").  (PSR ¶¶ 21, 24, 25).  The rival gangs incited violence amongst themselves by taunting each other on social media and also entering each other's territories and conducting drive-by shootings.  (PSR ¶ 24).  Members of Southside continued to deal drugs after the arrests of members of YTMG in 2016.  (PSR ¶¶ 24, 34).

Hines was a manager and supervisor in Southside's drug dealing.  (PSR ¶ 21).  He sold large quantities of crack cocaine to members of Southside (and before the schism between the two groups, to members of YTMG[4]), totaling more than 280 grams of crack, (PSR ¶¶ 21, 28, 35),

---

[4]  In the trial of YTMG leader Tyrin Gayle, the Court heard Laquan Falls testify that Hines ("Young Money" or "YM") sold hundreds of grams of crack to members of YTMG including Gayle, and that on one occasion when buying crack from Hines, Falls observed what he estimated to be 500 grams sitting on Hines' table. *United States v. Tyrin Gayle*, 16 Cr. 361 (CS), September 7, 2017 Tr. 174–183.  Brendan Germaine similarly testified that he had purchased crack from Hines.  September 13, 2017 Tr. 860–861.

as well as quantities of heroin for redistribution (PSR ¶ 35).  He was also a prominent member of Southside, and advertised both his drug dealing and membership in Southside on social media, including in an explicit video with other Southside members referring to drugs and firearms. (PSR ¶ 23).  Hines also used Facebook to discuss and approve of Southside's rivalries with other Newburgh gangs, and threatened people who cooperated with law enforcement.  (PSR ¶¶ 25–27).  Hines was aware that his co-conspirators sold crack and heroin, and that co-conspirators carried firearms and committed acts of violence in furtherance of Southside and the narcotics conspiracy.  (PSR ¶ 28).

## LEGAL STANDARD

A prisoner may move to vacate, set aside, or correct his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). However, "[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (quotation marks and citation omitted); *United States v. Frady*, 456 U.S. 152, 165 (1982) ("[W]e have long and consistently affirmed that a collateral challenge may not do service for an appeal.").

### Statute of Limitations

Section 2255 allows a petitioner one year from "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1).  For purposes of a plea, "an unappealed federal criminal judgment becomes final when the time for filing a direct appeal expires."

9

*Moshier v. United States*, 402 F.3d 116, 118 (2d Cir. 2005).  "That occurs 14 days after the entry

of judgment."  *Robinson v. United States*, No. 18-CR-373 (RJS), 2021 WL 568171, at *3

(S.D.N.Y. Feb. 16, 2021) (citing Fed. R. App. P. 4(b)(1)).

<u>*Strickland* Standard</u>

A claim of ineffective assistance of counsel fails unless a defendant: (i) overcomes a

"strong presumption" that his counsel's conduct was reasonable and shows that his

representation "fell below an objective standard of reasonableness" under "prevailing

professional norms," and (ii) "affirmatively prove[s] prejudice," that is, shows that "but for

counsel's unprofessional errors, the result of the proceeding would have been different."

*Strickland v. Washington*, 466 U.S. 668, 687-89, 693-94 (1984); *accord United States v. De La*

*Pava*, 268 F.3d 157, 163 (2d Cir. 2001). The burden is on the defendant to establish both

elements. *Strickland*, 466 U.S. at 687.

Under the first prong of *Strickland* analysis, the reviewing court "must indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable professional

assistance, bearing in mind that there are countless ways to provide effective assistance in any

given case and that even the best criminal defense attorneys would not defend a particular client

in the same way." *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (internal quotation

marks and brackets omitted). A defendant cannot prevail on a claim of ineffective assistance

merely because he believes that his counsel's strategy was inadequate. *United States v. Sanchez*,

790 F.2d 245, 253 (2d Cir. 1986).

10

Under the second prong, a defendant must meet the "heavy burden" of showing "actual prejudice." *Williams v. Taylor*, 529 U.S. 362, 394 (2000). To satisfy the prejudice prong, the defendant must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A defendant cannot establish prejudice by merely showing that counsel's errors had "some conceivable effect" on the result, for "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* at 693. Only where both prongs of the *Strickland* test are satisfied can it be concluded that "counsel was not functioning as the 'counsel' guaranteed to the defendant by the Sixth Amendment." *Id.* at 687.

## ARGUMENT

The Court should deny Hines' Petition. First, the Petition is untimely: the Court entered judgment on August 1, 2019, but Hines did not file the Petition until October 31, 2020, more than a year later, and has provided no information for why he did not file in a timely manner other than the vague statement that the COVID-19 pandemic made it "nearly impossible" to do so. Second, were the Court to consider the merits of Hines' Petition, there are none: Mr. Palma provided effective assistance as to Hines' motion practice, plea bargaining, and sentencing; and Hines does not assert he was legally prejudiced by Mr. Palma's representation. Based on conversations with Mr. Palma, the Government concludes that Mr. Palma also provided effective

11

assistance regarding Hines' appeal, and respectfully requests that the Court order Mr. Palma to file a supplemental declaration regarding that issue.[5]

### A. The Petition is Untimely

The Court entered judgment in this case on August 1, 2019. Hines did not file a notice of appeal, so his conviction became final fourteen days later on August 15, 2019. *Robinson v. United States*, 2021 WL 568171, at *3. Because Hines filed the Petition on October 31, 2020, more than one year after the conviction became final, it is untimely and must be dismissed.

Hines offers no reason to disturb that conclusion. The Second Circuit has recognized that, in certain circumstances, a habeas petitioner can bring their untimely claim under "equitable tolling," "if he shows: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *United States v. Wright*, 945 F.3d 677, 684 (2d Cir. 2019) (citing *Holland v. Florida*, 560 U.S. 631, 645 (2010)). The Government agrees that "the COVID-19 pandemic could—in certain circumstances— conceivably warrant equitable tolling." *United States v. Haro*, No. 8:18CR66, 2020 WL 5653520, at *4 (D. Neb. Sept. 23, 2020). But equitable tolling is only appropriate if the petitioner "has been pursuing his rights diligently." *Wright*, 945 F.3d at 684. Hines has not provided evidence that he did so. *See Howard v. United States of America*, No. 4:20-CV-1632 JAR, 2021 WL 409841, at *3 (E.D. Mo. Feb. 5, 2021) (denying equitable tolling for petitioner's

---

[5] Hines' Petition styles his claims in another order, and Mr. Palma's declaration follows Hines' order. The Government instead structures its opposition around the timing of each incident in relation to Hines' criminal case.

failure to demonstrate diligence); *United States v. Barnes*, No. 18-CR-0154-CVE, 2020 WL

4550389, at *2 (N.D. Okla. Aug. 6, 2020) (same).

To the contrary, Hines' failure to pursue his rights predates the COVID-19 pandemic.

Hines knew he received a 15-year sentence, above what Mr. Palma had supposedly promised

him, immediately after this Court's sentencing on August 1, 2019, and he knew or should have

known that Mr. Palma had not filed a notice of appeal within 14 days of judgment.  The COVID-

19 pandemic began to affect the Bureau of Prisons (and the country) approximately 6 months

after August 15, 2019.  While Hines did request his plea agreement and certain transcripts in

early 2020, months after sentencing, his Petition is not predicated on the agreement or the

transcripts.  Hines offers little information about steps he took evidencing "reasonable diligence

in attempting to file after the extraordinary circumstances began."  *Valverde v. Stinson*, 224 F.3d

129, 134 (2d Cir. 2000).  For instance, Hines does not explain why he did not file his Petition

earlier given the information he did have before the pandemic hit, why he only requested an

extension of the statute of limitations on September 10, 2020, almost a month after the statute of

limitations had already run, or how his situation was distinguishable from many of his fellow

prisoners who filed a flurry of compassionate release applications in the midst of the pandemic.

*Contra United States v. Mayfield*, No. 4:16-CR-3077, 2021 WL 826577, at *1–2 (D. Neb. Mar.

4, 2021) (finding diligence and granting equitable tolling for defendant who twice filed motions

during the statutory period requesting extension of statute of limitations because of the COVID-

19 pandemic, and then filed an initial timely petition followed by a later, supplemental, untimely

petition).  Thus, there is no "causal relationship between the extraordinary circumstances on

13

which the claim for equitable tolling rests and the lateness of his filing." *Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2001) (citing *Valverde*, 224 F.3d at 134).[6]

### B.   The Petition Fails on its Merits

Hines makes numerous allegations regarding Mr. Palma's supposed ineffectiveness, though many are scattershot and somewhat difficult to distinguish.  Mr. Palma's Affidavit rebuts each of them, in detail.  As a result, even if the Court declines to dismiss the petition as untimely, it may be denied on the merits without an evidentiary hearing.  *Kajtazi v. United States*, No. 16-CR-289 (ALC), 2018 WL 3962932, at *4 (S.D.N.Y. Aug. 17, 2018) (evidentiary hearing not required if attorney affidavit is "detailed" and "conclusively show[s]" defendant did not make a specific request, in contrast to petitioner's "self-serving allegations"); see *also Padin v. United States*, 521 F. App'x 36, 38 (2d Cir. 2013) (upholding district court's refusal to hold an evidentiary hearing based on affidavits, plea, sentencing transcripts, and observations of counsel).  Moreover, even if Mr. Palma did provide ineffective assistance – which Hines has failed to show – the petition must nonetheless be denied because Hines suffered no prejudice.

---

[6]  Hines also suggests that his petition is timely because the COVID-19 pandemic and associated limitations on his legal research constituted an "impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States."  28 U.S.C. § 2255(f)(2).  Limitations imposed by prisons to stop the spread of a deadly disease were of course not governmental action in violation of any law. *See, e.g.*, *United States v. Leggio*, No. CR 3:17-41, 2021 WL 694806, at *3 (M.D. Pa. Feb. 22, 2021).  Further, Hines does not define how the "impediment" meant he was unable to file in August 2020, but was able to do so in October 2020.

**1. Mr. Palma Acted Effectively in Advising Hines' Regarding Suppression Litigation, and Hines was not Prejudiced**

**a. Legal Standard**

In the context of an allegation that counsel acted ineffectively by failing to file a suppression motion, the presumption of competent attorney performance under *Strickland* will be rebutted only if the defendant proves that defense counsel failed "'to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) (quoting *Strickland*, 466 U.S. at 691).

To demonstrate prejudice for failing to make a suppression motion, the defendant must show both that the motion is meritorious and that there is a reasonable probability that the outcome of the proceeding would have been different if the evidence had been suppressed. *See United States v. Matos*, 905 F.2d 30, 32 (2d Cir. 1990) (citing *Kimmelman*, 477 U.S. at 375-76); *Laaman v. United States*, 973 F.2d 107, 113 (2d Cir. 1992) ("'Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the [defendant] must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.'") (quoting *Kimmelman*, 477 U.S. at 375); *see also United States v. DiTommaso*, 817 F.2d 201, 215 (2d Cir. 1987); *United States v. Caputo*, 808 F.2d 963, 967 (2d Cir. 1987); *United States v. Cruz*, 785 F.2d 399, 406 (2d Cir. 1986).

In assessing claims that counsel's failure to file a suppression motion constitutes ineffective assistance, the Second Circuit has held that, "for purposes of effective assistance, not every possible motion need be filed, but rather, only those having a solid foundation. Counsel

15

certainly is not required to engage in the filing of futile or frivolous motions." *United States v. Nersesian*, 824 F.2d 1294, 1322 (2d Cir. 1987) (internal citation omitted); *accord Jones v. Barnes*, 463 U.S. 745, 754 (1983); *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). Thus, "the failure to file a suppression motion does not constitute per se ineffective assistance of counsel." *Kimmelman*, 477 U.S. at 384.

### b. Discussion

Mr. Palma filed pre-trial motions on behalf of Hines. Now Hines complains that Mr. Palma acted ineffectively by failing to move to suppress the Title III wiretaps. Petition at 6. But Hines' argument is inconsistent with the law: he asserts that he wanted Mr. Palma to move to suppress the Title III wiretaps "because it was definitely not me, or my voice on the recordings." Petition at 6. Of course, only an "'aggrieved person'" "may move to suppress the contents of a wire or oral communication intercepted in violation of" Title III. *Alderman v. United States*, 394 U.S. 165, 175 n.9 (1969) (citing 18 U.S.C. § 2518(10)(a)). An "aggrieved person" is "a person who was a party to any intercepted … communication or a person against whom the interception was directed." 18 U.S.C. § 2510(11). Any motion filed by Mr. Palma to suppress the Title III wiretap would have been frivolous absent "showing by [Hines] that his or her voice was heard on the wire or that his or her telephone was tapped." *United States v. Burford*, 755 F.Supp. 607, 609 (S.D.N.Y. 1991) (citing *United States v. Fury*, 554 F.2d 552, 525 (2d Cir. 1977)). Mr. Palma advised Hines precisely that, that Hines "would have to affirm in writing that it was his voice captured," and that written statement "would foreclose him from testifying that it was not him on the recordings." Palma Affidavit ¶ 15; *see also United States v. Jaswal*, 47 F.3d 539, 543 (2d Cir. 1995) ("Prior inconsistent suppression hearing testimony may properly be used to impeach a

16

defendant during trial."). According to Mr. Palma, Hines withdrew his request that Mr. Palma file such a motion; even if Hines had asked Mr. Palma to file such a motion without an affidavit by Hines that it was his voice, given the context described, Mr. Palma was "not required to engage in the filing of [such a] futile or frivolous motion[]." *Nersesian*, 824 F.2d at 1322.

Notably, besides his assertion that the voice on the Title III wiretaps was not his, Hines offers no explanation for the supposed "other technical grounds that made them illegal." Thus, even if Hines had submitted an affidavit giving him standing to controvert the Title III wiretaps, there is no explanation for how that motion would be "meritorious," or that there was "a reasonable probability that the verdict would have been different absent the excludable evidence." *Laaman*, 973 F.2d at 113.[7]

### 2. Mr. Palma Acted Effectively in Advising Hines Regarding Plea Negotiations, and Hines was not Prejudiced

#### a. Legal Standard

Criminal defendants do not have a constitutional "right to be offered a plea [agreement] . . . nor a federal right that the judge accept it." *Missouri v. Frye*, 566 U.S. 134, 148-49 (2012). However, "[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler v. Cooper*, 566 U.S. 156, 168 (2012).

In *Frye*, the Supreme Court held that:

---

[7] And of course, even had Mr. Palma successfully suppressed the fruits of the Title III wiretaps, the Government had ample additional evidence of Hines' guilt, including, for example, the expected testimony of Laquan Falls and Brendan Germaine regarding Hines' distribution of huge quantities of crack during the relevant time period, and the other evidence described below, in the discussion of Mr. Palma's assistance regarding Hines' plea.

> [A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. . . . When defense counsel allowed the offer to expire without advising the defendant or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires.

566 U.S. at 145. A defendant is entitled to the effective assistance of counsel in connection with plea negotiations because one of the basic duties of a defense attorney is to provide clients with the benefit of professional advice on whether to plead guilty. *See Lafler*, 566 U.S. at 162-63; *Purdy v. United States*, 208 F.3d 41, 44-45 (2d Cir. 2000). "As part of this advice, counsel must communicate to the defendant the terms of the plea offer, and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." *Purdy*, 208 F.3d at 45; *accord Frye*, 566 U.S. at 145. To establish a Sixth Amendment violation, the defendant must prove that his attorney in fact failed to communicate a plea offer or failed to provide objectively reasonable advice about the decision to plead guilty. *See, e.g., Cullen v. United States*, 194 F.3d 401, 404 (2d Cir. 1999); *United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998) (per curiam); *Boria v. Keane*, 99 F.3d 492, 496-97 (2d Cir. 1996).

In order to show prejudice for a claim of ineffective assistance related to a plea disposition, "the prejudice analysis 'focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process'"; "'[i]n other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Thomas v. United States*, No. 15 CR. 667-10, 2020 WL 1285622, at *5 (S.D.N.Y. Mar. 18, 2020) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Courts should "look to

18

contemporaneous evidence to substantiate a defendant's expressed preferences," not "post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017).

### b. Discussion
#### (1)  Mr. Palma Provided Effective Assistance

Mr. Palma's Affidavit lays out, in careful detail, the steps he took to inform Hines of his options, including the results were he to plead guilty.  The Affidavit, and the facts, undermines each of Hines' allegations of ineffective assistance.  As Hines repeatedly swore, he pleaded guilty voluntarily and of his own accord.

Hines first alleges, repeatedly and with supposed support from four undated affidavits from his family members and acquaintances, that Mr. Palma "promised" him, and "guaranteed" to members of his family, that the Court would sentence Hines to the mandatory minimum sentence of 10 years.  Petition at 5; Affidavit of Shaquan Melvin ¶ 4; Affidavit of Novella Farquharson ¶ 2; Affidavit of Latrica Hines; Affidavit of Artaya Williamson.  But Hines signed a plea agreement that specifically stated "that the sentence to be imposed upon the defendant is determined solely by the Court."  Plea Agreement 6.  And Hines told this Court, under oath, that no one had "promised [him] anything" to enter into the plea agreement, and that no one had "made a promise . . . as to what [his] sentence would be."  (Plea Tr. 15).  The Court should attribute a "strong presumption of verity" to those "solemn declarations in open court." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).  Mr. Palma's Affidavit goes further: "at no time did [he] promise, or guarantee, Mr. Hines or his family that he would receive any particular prison term."  Palma Affidavit ¶ 8.  Given Mr. Palma's definitive statements that he never

19

promised Hines any particular sentence, and Hines' own statements at his plea proceeding, there is simply no factual basis to conclude that Hines was induced to plead guilty because of any such promises.[8]

Hines next alleges that Mr. Palma "misinform[ed]" him by asserting that pursuant to the First Step Act, Hines would only have to serve 65% of his sentence.  Petition at 5.  In his definitive declaration, Mr. Palma explained that he told Hines not to decide to plead guilty based on speculation about any possible changes in federal law.  Palma Affidavit ¶ 9.  Hines also asserts that Mr. Palma told him that Hines would be eligible for parole under the federal system in just a few years.  Mr. Palma denies this, Palma Affidavit ¶ 9, and Hines himself told the Court he understood that there is no parole in the federal system.  (Plea Tr. 13).

Hines makes a number of additional assertions that Mr. Palma committed other forms of ineffective assistance through advising Hines to plead guilty.  Those include that Mr. Palma advised him to plead guilty despite Hines' factual innocence and regardless of the evidence because he "NEVER sold any drugs to South Street;" that Mr. Palma had prepared a false plea allocution for Hines; and that Mr. Palma advised Hines that it was "impossible to win motions." Hines also asserts (under his claim of ineffective assistance at sentencing) that Mr. Palma specifically told him that the Government could not use the rap lyrics or social media posts

---

[8]  Indeed, the undated affidavits supposedly signed by Hines' family members are unclear as to *when* Mr. Palma made any promise about the sentence.  For instance, Shaquan Melvin said that these communications were "after Ardae just pled guilty" and "a couple weeks before sentencing." So even if Mr. Palma made such promises to Ms. Melvin, those promises could not have induced Hines to plead guilty since they occurred after the plea had transpired.

against him at sentencing, and that Hines could only be held accountable for the narcotics conspiracy.  Petition at 16.

But each assertion is rebutted by Hines' own sworn statements at the plea, and by Mr. Palma's detailed recollection.  Hines pleaded guilty of his own accord and never told Mr. Palma that he was factually innocent, Palma Affidavit ¶¶ 10, 13, and Hines swore to this Court that he was pleading guilty voluntarily and of his own free will.  (Plea Tr. 20).  Mr. Palma explained to Hines the relevant legal concepts undergirding the charges against him, including that even if there were "no drug seizures," Hines "was never caught with any drugs" or "controlled buys," or "physical evidence," Petition at 15, Hines could still be convicted of narcotics conspiracy (and the racketeering conspiracy).  Palma Affidavit ¶ 12.  Mr. Palma's declaration, and Hines' answers at his plea, also undercut Hines' allegation that Mr. Palma prepared a false allocution on Hines' behalf.  Palma Affidavit ¶ 11; (Plea Tr. 18) ("Mr. Hines, can you tell me in your *own words* what you did that makes you guilty?") (emphasis added).  *See also Dao v. United States*, No. 03-CR-734 (DAB), 2015 WL 10792015, at *3 (S.D.N.Y. Aug. 26, 2015) (rejecting habeas petition predicated on supposed false allocution when the "Petitioner previously stated under oath that no one threatened him or forced him to plead guilty" and "stated under oath that he prepared his written allocution with his attorney.").  Contrary to Hines' assertion that Mr. Palma told him that it was "impossible to win motions," Mr. Palma did in fact file a motion.  Palma Affidavit ¶ 10; Dkt. No. 200.  And Hines' assertion that Mr. Palma advised that the Court could only sentence him based on the "drugs," not social media or rap lyrics, is belied both by the fact that Hines pleaded guilty to racketeering conspiracy *as well as* narcotics conspiracy, and the

21

Court's clear instruction that the Court could only "determine the proper sentence in your case having in mind, not only the sentencing guidelines, but also each of the factors set forth in Title 18 U.S. Code Section 3553(a)." (Plea Tr. 12).

Additionally, the Government had extensive, overwhelming evidence, and Hines would have been convicted had he gone to trial. That evidence included, among other evidence, intercepted communications showing Hines supplying William Fennell with heroin; testimony from Laquan Falls, Brendan Germaine, and other cooperating witnesses; Facebook private messages and public posts in which Hines arranged narcotics transactions, held himself out as a source of narcotics to Newburgh, bragged about his role in Southside, and addressed various Southside's arguments and fights, both internally and with other gangs; and a publicly-posted rap video in which Hines bragged about his role in Southside and selling drugs. *See e.g.*, Dkt. No. 127 (Transcript of December 21, 2017 Bail Hearing before Magistrate Judge Smith); (Plea Tr. 17–18) (description of Government's evidence).

In sum, there is no basis to conclude that Mr. Palma provided Hines with ineffective assistance with respect to Hines' decision to plead guilty.

### (2) Hines Suffered No Prejudice Regarding Plea Negotiations

Even had Mr. Palma acted ineffectively in predicting that the Court would impose a lower sentence, Hines suffered no prejudice, because he has not established that but for any errors, he "would have insisted on going to trial." *Thomas*, 2020 WL 1285622, at *5. Hines' Petition is actually quite clear about what happened: not that Hines would have *then* insisted on going to trial, but rather, he "now realize[s] [he] was suppose[d] to go to trial." Petition at 15. That is *precisely* the "post hoc assertion[]" that is not relevant for consideration under *Lee v.*

22

*United States*. The only contemporaneous evidence is that provided by Mr. Palma, that Hines "was not interested in going to trial," Palma Affidavit ¶ 13, and by Hines, who actually pleaded guilty rather than take a case so "weak" to trial. *See also United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir. 1989) ("we do not believe that appellant may avoid the effect of our precedents by characterizing a mistaken prediction as ineffective assistance of counsel."); *Jaber v. United States*, No. 13 CV 485 (CM), 2019 WL 2498216, at *1–2 (S.D.N.Y. June 4, 2019) ("it is well established that a defendant who pleads guilty and later claims ineffective assistance based on his attorney's incorrect sentencing prediction, cannot establish that he was prejudiced if he was aware of the actual sentencing possibilities when he entered his plea.").

### 3. Mr. Palma Acted Effectively in Advising Hines Regarding Sentencing, and Hines was not Prejudiced

This Court saw and heard the lengths Mr. Palma went to advocate for Hines at sentencing. Mr. Palma filed a lengthy sentencing letter with detailed disputes to the PSR, moved *in limine* to try and limit cross-examination were Hines to testify at his sentencing, and requested discovery materials. Dkt. Nos. 405, 425, 433. He argued these motions at length before this Court. Those motions failed. Mr. Palma then *advised* Hines not to testify. Palma Affidavit ¶ 16. But as Hines seems to recognize, this was merely *advice*: Mr. Palma "told" him not to "risk it;" Mr. Palma "informed" him that if he took the stand, the Government may cross-examine him on a homicide investigation; and Mr. Palma "just repeated that 'it would all be bad'" were Hines to testify. Petition at 8. This was advice which Hines was free to take or not. This advice was sound, given the breadth of material with which the Government could cross-examine Hines, including his extensive criminal history, conduct in the instant case, and if the defendant had

23

opened the door, the defendant's participation in the "extraneous matter," which would have forced Hines to choose between perjuring himself or admitting his participation in a serious crime for which he did not have coverage under the plea agreement. Regardless, in no way did Mr. Palma "prevent" Hines from testifying, if Hines had so chosen. Hines may be angry that Mr. Palma "made it appear as if [Hines'] right to testify was his alone," but ultimately, Hines himself made that choice; the mere fact that he is now unhappy with that decision is no basis to conclude Mr. Palma provided ineffective assistance. And even with that decision, Hines *did* have a chance to explain himself, though not under oath or subject to cross-examination: he was provided with the opportunity, as guaranteed by Rule 32(i)(4), to address the Court. (Sentencing Tr. 56–57). Given the lengths Mr. Palma went before Hines' sentencing and his own lengthy advocacy for a 10 year sentence at the proceeding, (Sentencing Tr. 50–56), there is simply no basis to conclude that Mr. Palma acted ineffectively in advising Hines.[9]

Further, even if Mr. Palma had acted ineffectively in advising Hines not to testify, in order to show prejudice, Hines must show there was a "reasonable probability" that the Court's sentence would have been lower had Hines testified. *Mateus v. United States*, No. 18 CIV. 638 (KPF), 2020 WL 1046624, at *6 (S.D.N.Y. Mar. 4, 2020) (a habeas petitioner "must show that but for counsel's

---

[9] Hines repeatedly misinterprets a colloquy between Mr. Palma and the Court. Mr. Palma made the rhetorical point that without knowing more about the homicide investigation, he would be deeply concerned about calling Hines to testify, and open the risk of acting ineffectively. (Sentencing Tr. 13). Mr. Palma backed off that statement ("I am not meaning ineffective"), which regardless was apparently meant to illustrate how important the information was to Mr. Palma before advising Hines. Regardless, Mr. Palma was otherwise clear: contra Hines, he did not "t[ake] the choice upon himself," Petition at 16, but rather wanted to properly "counsel" his client. (Sentencing Tr. 13).

24

ineffectiveness, there is a reasonable probability that the sentence imposed would have been different.") (citing *United States v. Workman*, 110 F.3d 915, 920 (2d Cir. 1997)).  But there is no reason to believe that Hines' proposed testimony would have had any bearing on the Court's sentence (even putting to the side any cross-examination of Hines on any subject).

Hines states that he wanted to explain to the Court that he "was not involved in any of the violence associated with the case."  But the Court knew that in fashioning its sentence.  (Sentencing Tr. 60 ("I accept that he did not commit acts of violence himself"), 61 ("I think a lot of what he said was boasting, and he does not seem to have put his money where his mouth was in terms of violence, but as an older and respected figure, his words do have meaning.")).  Hines asserts that he would have explained that the rap videos and social media posts were First Amendment protected speech, and "superficial," designed only to seem cool to sell music and clothing.  But Mr. Palma argued that point at length, and the Government established, over and over again in this case and in *United States v. Tyrin Gayle*, 16 Cr. 361 (CS), rap videos and social media posts in fact fueled actual violence between the rival street gangs.  (PSR ¶ 25).  Given the extensive context for the evidence the Government relied on at sentencing and the Court's deep familiarity with the history of this case and *Gayle*, there is simply no reason to believe that the Court would have meted out a lower sentence had Hines testified at his sentencing proceeding.

The Court made that quite clear at sentencing: the Court's sentence was based not solely on the seriousness of any violence committed by members of Southside or referenced by Hines in his social media or the rap videos, but also the deleterious effect of his distributing "a lot of crack onto the streets of Newburgh and some heroin," which "have made the city a very difficult place

25

to live," and his history and characteristics, including his "abysmal criminal record and his complete failure to abide by any supervision or show any respect for the law." (Sentencing Tr. 60, 62). Nothing Hines would have explained about any video or social media could have changed the Court's views on those fixed points, and thus there is no evidence that had he testified his sentence would have been any different.

### 4. The Government Understands that Hines Did Not Specifically Instruct Mr. Palma to File an Appeal

The Second Circuit has held that "a lawyer who disregards a defendant's specific instruction to file a notice of appeal acts in a manner that is professionally unreasonable." *Campusano v. United States*, 442 F.3d 770, 773 (2d Cir. 2006). The burden to demonstrate that the defendant *specifically instructed* his counsel to file a notice of appeal rests on the defendant. *See, e.g.*, *Kajtazi v. United States*, No. 16-CR-289 (ALC), 2018 WL 3962932, at *3 (S.D.N.Y. Aug. 17, 2018) ("Kajtazi has not demonstrated that he specifically instructed McMahon to file a notice of appeal.").

After reviewing the declaration filed by Mr. Palma, the Government concluded there was some ambiguity regarding whether Hines instructed Mr. Palma to file a notice of appeal. Specifically, Hines asserts that he "reminded" Mr. Palma to file the appeal after sentencing. Petition at 6. In his affidavit, Mr. Palma declares that based on his discussions with Hines regarding the appellate waiver, and that the Court's imposition of a below Guidelines sentence, he did not file a notice of appeal. Palma Affidavit ¶ 15. On March 10, 2021, the Government had a conversation with Mr. Palma, who confirmed that Hines never instructed him to file a notice of appeal after sentencing. To the extent the Court has additional questions regarding

26

Hines' statements to Mr. Palma, the Government respectfully requests that the Court order Mr. Palma to describe his discussions with Hines regarding any notice of appeal in a supplemental declaration and file it with the Court. The Government respectfully submits that once filed, the supplement will "conclusively show" that Hines did not make a specific request to file a notice of appeal, in contrast to petitioner's "self-serving allegations," and the Court should deny that portion of the Petition without a hearing. *Kajtazi*, 2018 WL 3962932, at *3.[10]

In summary, Hines has failed to meet both prongs of the *Strickland* analysis with respect to his claims regarding Mr. Palma's representation of him. Far from deficient, Mr. Palma provided Hines with the tremendous benefit of his assistance. As charged, Hines faced a maximum sentence of life imprisonment and a mandatory minimum sentence of twenty years if convicted of all of the counts of the indictment, including Count Three (which carried a 10 year mandatory minimum sentence) and Count Six (a 924(c) discharge with a 10 year mandatory minimum to run consecutive to all other sentences). As a result of Mr. Palma's vigorous defense of Hines and successful plea negotiation, Hines obtained a plea offer that omitted the 924(c) discharge altogether and stipulated a Guidelines range of 210 to 262 months' imprisonment. After Mr. Palma's effective advocacy for Hines at sentencing, the Court sentenced him to a

---

[10] The Government notes that any appeal filed by Hines would have been, and would now be, frivolous. He knowingly and voluntarily waived any appeal in the Plea Agreement of a sentence of 210 to 262 months'; he received a sentence well below the bottom of that range. *See, e.g., United States v. Djelevic*, 161 F.3d 104 (2d Cir. 1998) (holding that appeal of sentence under section 2255 was foreclosed by plea agreement where district court imposed a sentence within the range stipulated by the agreement). "A rational defendant would not want to file an appeal" if bargained for and "significantly lower" than the mandatory minimum sentenced charged in the Indictment. *Kajtazi*, 2018 WL 3962932, at *4.

sentence of 180 months – well below the stipulated range.  Hines has failed to establish that Mr. Palma's representation of him at all stages did anything other than greatly benefit him.

## **CONCLUSION**

The Court should deny the Petition as untimely, or in the alternative, deny the Petition's claims of ineffective assistance with respect to motion practice, plea bargaining, and sentencing on this record, and order Richard Palma, Esq. to file a supplemental declaration regarding whether Ardae Hines instructed Palma to file a notice of appeal after Hines' sentencing.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

By:_____/s/_____
                Samuel Raymond
                Jacqueline Kelly
                Allison Nichols
                Maurene Comey
                Assistant United States Attorneys
                (212) 637-6519

28